**Harold RING, Muriel Ring, Clifford Consolidated, a partnership, and Stanley A. Witteman, Plaintiffs and Appellees,**

v.

**Melvin W. BALLANTYNE, Defendant and Appellant.**

**Civ. No. 11,362.**

Supreme Court of North Dakota.

Oct. 20, 1987.

Thomas Law Firm, Minot, for plaintiffs and appellees; argued by Robert S. Thomas.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and appellant; argued by Thomas A. Mayer.

LEVINE, Justice.

The defendant, Melvin W. Ballantyne, appeals from an order of the district court directing a court appointed master to apportion royalty payments to the plaintiffs, Harold and Muriel Ring, Clifford Consolidated, a partnership, and Stanley A. Witteman, from a fund accumulated by Ballantyne. We reverse and remand.

Ballantyne, and certain undesignated others, founded the Farmers Exploration Company (Farmers) which was incorporated in January 1959. By December 1, 1959, Farmers had acquired leasehold interests in approximately 80,000 mineral acres from 260 landowner/lessors. Each lessor received one share of capital stock in Farmers for every four mineral acres leased. In addition, each lessor acquired the right to receive a share of a $\frac{1}{32}$ "pooled overriding royalty interest" in all of the oil and gas leases acquired by Farmers in the proportion that the lessor's leased mineral acres bore to the total mineral acres leased by Farmers. Each lease carried a primary term of 10 years but continued so long as there was production on the leased premises or on land with which the leased premises had been pooled. Each lease also provided that the lessor would receive a $\frac{1}{8}$ royalty for all oil and gas produced from the leased premises. Although the $\frac{1}{32}$ overriding royalty interest was pooled among the 260 landowner/lessors to be shared proportionately, there was no pooling of the $\frac{1}{8}$ royalty interest which each lessor was to receive only for production on that lessor's premises. The $\frac{1}{8}$ royalty interests are not in dispute.

Ballantyne, as an officer, member of the board of directors and shareholder of Farmers, received royalty and other payments on behalf of Farmers as well as the pooled overriding royalty payments on behalf of the 260 landowner/lessors. Ballantyne concedes that he commingled the overriding royalty payments with other revenues received by him on behalf of Farmers, and he further concedes that at no time did he disburse any of the overriding royalty to any of the lessors. The Secretary of State issued an order revoking Farmers' corporate charter on August 1, 1976, after which time all corporate activity ceased. However, Ballantyne continued to receive and accumulate overriding royalty payments on behalf of the lessors.

The plaintiffs are members of the group of 260 lessors that executed leases with Farmers. Oil and gas was produced on the plaintiffs' leased premises during the primary term and production thereon continues at this time. The plaintiffs have received all of their $\frac{1}{8}$ royalty payments on production from their leased premises. However, they have filed this lawsuit against Ballantyne asserting that since August 1, 1976, the date that Farmers' charter was revoked, Ballantyne has wrongfully held and has failed to disburse moneys to them representing their share of the $\frac{1}{32}$ pooled overriding royalty interest.

When this lawsuit was filed, there was approximately $145,000 held in an account by Ballantyne. The district court appointed an individual to act as a receiver/master to hold the account and to determine who was entitled to receive the account funds. After holding a hearing, the master/receiver filed a report, dated August 20, 1986. In that report, he found that since August 1, 1976, "no money has been disbursed to

participating landowners or former shareholders of Farmers Exploration Company." The master also found that the overriding royalty payments due to the plaintiffs exceeded the amount of funds currently held in the account and that those funds should be entirely distributed to the plaintiffs. The district court adopted the master's report and directed the master to apportion the royalty payments in accordance with that report.

On appeal Ballantyne asserts that the district court erred in ordering distribution to the plaintiffs of all funds held in the account. We agree.

■ The plaintiffs assert that prior to August 1, 1976 all leases, other than those held by the plaintiffs, had been surrendered by Farmers and that those lessors whose leases were surrendered have no interest in the overriding royalty nor any claim to the moneys held by the receiver. We disagree.

There is no provision in the leases providing for annual delay rental payments. Apparently, in lieu of such payments, each lessor received only a right to share in the pooled $\frac{1}{32}$ overriding royalty on production of all acres leased by the 260 lessors. There is no provision in any lease which states that a lessor's share of the pooled override would expire upon termination or surrender of that lessor's lease. If an individual lease were surrendered or terminated at the end of the primary term because of the absence of production, that lessor would lose the $\frac{1}{32}$ overriding royalty on his individual land but would retain the right to receive overriding royalty on all other leases still in effect. We conclude that the leases are unambiguous and that all of the 260 lessors retain the right to receive a proportionate share of the pooled override.

■ The district court, in adopting the master's report, impliedly found that the amount of the $\frac{1}{32}$ pooled overriding royalty payments, together with interest, received by defendant Ballantyne since August 1, 1976, exceeded the total amount of funds currently held in account by the receiver. The plaintiffs introduced evidence which supports that finding. Although Ballantyne contends that some of the moneys held by the receiver were not overriding royalty payments but payments from other sources, he has failed to introduce evidence to support that contention. Ballantyne concedes that he commingled other funds with the overriding royalty payments and that he has neither kept records nor made an accounting of the commingled funds. We conclude that the finding by the court that the pooled overriding royalty payments exceeded the funds currently held by the receiver is not clearly erroneous. We believe that, under these circumstances, the trial court did not err in concluding that all moneys held by the receiver should be distributed to those lessors entitled to share in the pooled overriding royalty. The court's error was in concluding that the plaintiffs alone fit that category rather than all 260 lessors.

In accordance with this opinion, the court's order is reversed and the case is remanded for distribution of the fund to the plaintiffs and all of the other 260 lessors in the proportion that each lessor's leased mineral acres bears to the total mineral acres leased by Farmers.

In calculating and making the distributions to the lessors, the court may wish to utilize the continued services of the master/receiver or to appoint a separate trustee for that purpose as was suggested in Ballantyne's counterclaim. The cost for such administration should be paid from the fund prior to disbursement.

Neither party is awarded costs on appeal.

In view of our disposition of this case, we find it unnecessary to resolve additional issues raised on appeal.

Reversed and remanded.

ERICKSTAD, C.J., HUNKE, D.J., and VANDE WALLE, J., PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, and HUNKE, D.J., sitting in place of GIERKE, J., and MESCHKE, J., disqualified.